# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

ABRAHAM ATACHBARIAN, on behalf of himself and all others similarly situated,

                Plaintiff,

                v.

THE CHARLES SCHWAB CORPORATION and CHARLES SCHWAB & CO., INC.,

                Defendants.

Civil Action No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Abraham Atachbarian ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), brings this Class Action Complaint against the Charles Schwab Corporation and Charles Schwab & Co., Inc. (collectively, "Schwab" or "Defendants"), and alleges, upon personal knowledge as to his own actions and the investigation of counsel, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.  Plaintiff brings this action to remedy harms caused by Schwab's failure to pay "reasonable" interest rates to its customers with retirement accounts and rates consistent with prevailing market conditions to its brokerage customers in its cash sweep programs, in breach of its fiduciary and contractual duties, including its duty

of loyalty. Instead, Schwab paid Plaintiff and proposed Class members unreasonably low interest rates, particularly given the recent high interest rate environment, enabling it to reap huge profits from the spread, at the expense of its customers.

2.    A cash sweep program typically involves a brokerage firm moving uninvested cash from a customer's brokerage or retirement account into an interest-bearing account, generally in an affiliated bank or banks.  Moving uninvested funds is supposed to generate returns for the customers, who are entitled to interest on those funds to be paid at a reasonable rate, or at least a rate that is commensurate with prevailing market rates.

3.    In this instance, however, Schwab violated its fiduciary and contractual duties by sweeping customers' uninvested funds into sweep accounts, earning interest, using this earned interest to fund new or current lending activities, and then failing to pay their customers "reasonable" rates of interest or prevailing rates on the funds subject to the sweep. In this way, Schwab was able to increase its own revenues and profit from the difference or spread between the interest income on the investments it made and the interest rate that it paid to its customers.

4.    In failing to set and pay "reasonable" or prevailing rates of interest for its customers in the cash sweep programs, Schwab unfairly increased its own profits at customers' expense, particularly when the interest rate environment is significantly higher than the rates set for the customers.

5.    Schwab is required to act as a fiduciary in the best interest of its clients

with retirement accounts and retail accounts in which it is acting as a broker-dealer or an investment advisor.

6.   With respect to advisory accounts in which Schwab was acting as an investment advisor, Schwab's fiduciary duties are controlled by the Advisor Code, requiring that investment advisors owe a fiduciary duty to their clients in the conduct of their affairs in a manner to: (1) avoid serving their personal interests ahead of clients; and (2) avoid taking conflicts of interests, among other things. *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisors, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019); see also https://www.schwab.com/legal/investment-advisor-code-of-ethics#:~:text=The%20Adviser%20Code%20is%20based,(iii)%20avoid%2C%20and%2C (last viewed on Oct. 18, 2024).

7.   With respect to brokerage accounts, Schwab owed similar fiduciary duties as a broker-dealer, under Reg. BI. 17 C.F.R. §240.151-1.

8.   Schwab's account agreements, including the agreements for Schwab One accounts and for retirement accounts ("Account Agreements"), indicate that Schwab is acting as the customer's agent and custodian, in effect recognizing that Schwab is acting in a fiduciary capacity and, therefore, that it has a duty to put its customers' interests ahead of its own when investing their money.

9.   The Account Agreements referenced the Cash Features Program Disclosure Statement ("Disclosure Statement"), which specifically stated that

"[r]etirement and other benefit plan accounts will be paid a reasonable rate of interest" and that other accounts would be paid an interest rate that would be "consistent with prevailing market and business conditions."

10. Due to rising interest rates during the period of about 2020 until recently, Schwab's customers had an opportunity to earn more interest on their cash sweep account balances and should have been earning more interest on their sweep accounts. However, Schwab improperly kept interest rates paid on cash sweep accounts unreasonably low so that it could increase the net interest generated by the high interest rate environment for itself, leveraging its clients' uninvested cash for its own benefit, earning outsized returns and directly violating its duties to its clients.

11. For example, the yields on short-term U.S. Treasury Bills have increased dramatically since the start of 2022, and have been in the range of 4.5-5.6% for the past year. Meanwhile, as of September 2024, Schwab paid customers with cash sweep accounts an interest rate of only 0.20%, over 23 times less than the average yields on short-term Treasury Bills during that month. By contrast, Fidelity, one of Schwab's competitors, pays interest of approximately 5% on uninvested cash kept by investors in its brokerage accounts.

12. Schwab's reckless and intentional misconduct breaches its fiduciary and contractual obligations to its customers, including the implied covenant of good faith and fair dealing. Therefore, Plaintiff brings this class action on behalf of himself and a Class defined herein to remedy the harm Schwab's wrongdoing has caused.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

14.    This Court has personal jurisdiction over each of the Defendants. Defendants purposefully directed their business activity toward this District and maintained substantial contacts in this District and throughout the United States. Defendants' conduct has had the intended effect of causing injury to individuals and companies residing in or doing business throughout the United States, including in this District.

15.    Venue is appropriate within this District under 28 U.S.C. § 1391. At all relevant times, Defendants transacted business within this District and/or had agents in and/or that can be found in this District and engaged in a substantial portion of the activity at issue in this Complaint in this District.

## PARTIES

16.    Plaintiff Abraham Atachbarian is a citizen of California. He has a Schwab One brokerage account and a retirement account. Both accounts are subject to cash sweeps.

17.    Defendant The Charles Schwab Corporation is a Delaware holding

corporation with its principal place of business in Westlake, Texas. Through its operating subsidiaries, The Charles Schwab Corporation provides a full range of brokerage, banking, and financial advisory services.

18.    Defendant Charles Schwab & Co., Inc. is a California corporation with its principal place of business in Westlake, Texas. It is the wholly-owned broker dealer subsidiary of The Charles Schwab Corporation.

## SUBSTANTIVE ALLEGATIONS

### Schwab's Cash Sweep Programs

19.    Schwab has different cash sweep programs under its Cash Features Program: (i) the Bank Sweep program for retail brokerage accounts; (ii) the Bank Sweep for Benefit Plan for retirement and other benefit plan accounts; (iii) the Schwab One® Interest Feature; and (iv) the Money Fund Sweep Feature. Collectively, these are referred to herein as the "Cash Features Program."

20.    Schwab profits from its Cash Features Program by earning net interest income, which is the difference or spread between how much interest banks earn on loans and investments and how much they pay out to depositors (customers). Schwab is motivated to increase its net interest income by paying customers unreasonably low interest on the funds subject to the sweep while retaining the spread resulting from the higher rate of interest it earns on the customer cash that is held at banks which are affiliated with Schwab.

21.    Schwab's Cash Features Program transfers customer cash in the

customers' accounts called "sweep accounts" to interest-bearing deposit accounts at a bank or banks that are affiliated with Schwab, including Charles Schwab Bank, SSB; Charles Schwab Premier Bank, SSB; Charles Schwab Trust Bank; TD Bank, N.A.; and TD Bank, USA, N.A. (collectively, the "Affiliated Banks"). When funds in a customer's account are first available for deposit into deposit accounts at one of the Affiliated Banks, Schwab, as the customer's "agent," will open two deposit accounts on the client's behalf at the bank: a demand deposit account ("DDA") and a money market deposit account ("MMDA"). After Schwab opens the deposit accounts, it deposits the "Free Credit Balances", or funds that are not invested and are available for immediate cash payment, into customers' accounts. The Free Credit Balances are created by sales of securities, dividends, interest, deposits, or other means, which occur "from time to time".

22.    In addition, if a client's cash exceeds the $250,000 FDIC limit at each of the client's assigned affiliated banks, the excess amount will be deposited into the "Excess Bank," which is Charles Schwab Bank. Regardless of whether the banks are affiliated or unaffiliated with Schwab, the interest rates paid to Schwab customers are determined by the administrative fees that Schwab charges the banks.

23.    Schwab has control and discretion over the specific banks to which it sweeps customers' cash. All "instructions regarding the movement of [a client's] funds in the Bank Sweep and Bank Sweep for Benefit Plans Features must be provided by" Schwab to the banks, "and information concerning the Bank Sweep

and Bank Sweep for Benefit Plans Features may only be obtained from" Schwab. Moreover, the banks "will not accept instructions directly from" the client with respect to the client's "Deposit Accounts held through the Bank Sweep and Bank Sweep for Benefit Plans Features nor provide" the client "directly with information concerning these Cash Features." Finally, Schwab "can, at its discretion and upon written notice, terminate your use of the Bank Sweep or Bank Sweep for Benefit Plans Feature."

24.    Schwab controls and has discretion over: (a) the characteristics and parameters of each of the available Cash Features Program options (Bank Sweep and Bank Sweep for Benefit Plans Features); (b) the banks in which customers' swept cash is deposited, including for any cash that exceeds FDIC limits; (c) the rates of interest actually paid to customers on their Cash Features Program deposits (including because Schwab sets the annual per account flat fee charged to the affiliated and unaffiliated banks, which "reduces the amount of interest" the banks are willing to pay to customers); and (d) the termination of a client's use of the Bank Sweep or Bank Sweep for Benefit Plans Feature.

25.    Due to Schwab's control and discretion over customers' cash sweep holdings and the returns on such holdings, among other reasons, Schwab owes a fiduciary duty to all of its customers with cash in sweep accounts, which includes a duty to act in their best interests, and to place such best interests ahead of Schwab's interests. Schwab breached that fiduciary duty when it swept client cash into Cash

Features Program vehicles that paid customers unreasonably low interest rates.

### Schwab's Duties to Its Clients Under the Investment Advisers Act of 1940

26.    As to advisory and retirement accounts, Charles Schwab & Co., Inc. is a registered investment advisor bound by the fiduciary duties imposed on it by the Investment Advisers Act of 1940, including duties of care and loyalty. This includes a duty for Charles Schwab & Co., Inc. to act in the best interests of its clients, and to place the best interests of its customers ahead of its own self-interest.

27.    "The Advisers Act establishes a federal fiduciary duty for investment advisers. This fiduciary duty is based on equitable common law principles and is fundamental to advisers' relationships with their clients under the Advisers Act." Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR § 276 (July 12, 2019).

28.    "The Advisers Act establishes a federal fiduciary duty for investment advisers. This fiduciary duty is based on equitable common law principles and is fundamental to advisers' relationships with their clients under the Advisers Act." *Id*.

29.    Under this federal duty, Schwab "must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client." *Id*.

30.    If there is a conflict between Schwab's interests and its client's

interests, then Schwab is also required to "eliminate or make full and fair disclosure of all conflicts of interest which might incline an adviser—consciously or unconsciously—to render advice which is not disinterested such that a client can provide informed consent to the conflict." *Id*.

31.    Schwab "must make full and fair disclosure to its clients of all material facts relating to the advisory relationship." *Id*.

32.    Schwab's fiduciary duties also include a duty of care to carry out its responsibilities in an informed and considered manner and to act as an ordinary prudent person would act in the management of his or her own affairs. In addition, because Schwab becomes a fiduciary on the basis of representations of special skills or expertise, it is under a duty to use those skills and expertise for the benefit of its clients.

### Schwab Violated Regulations Under the Securities Exchange Act of 1934 Setting Forth a Broker's Duties to Act in the Best Interest of Its Clients (Reg. BI)

33.    In non-advisory accounts where Schwab is acting in its capacity as a broker-dealer, it is obligated to act in its clients' best interests under Reg. BI. 17 C.F.R. § 240.151-1.

34.    Reg. BI incorporates "key principles underlying fiduciary obligations, including those that apply to investment advisers under the Advisers Act, while providing specific requirements to address certain aspects of the relationships between broker-dealers and their retail clients." 84 Fed. Reg. 33318, 33320.

35.     Under Reg. BI, the investor "will be entitled to a recommendation … or advice … that is in the best interest of the retail investors and that does not place the interests of the firm or the financial professional ahead of the interests of the retail investor." 84 Fed. Reg. 33318, 33321.

36.     Reg. BI consists of a "General Obligation," which states, "When making a recommendation, a broker-dealer must act in the retail customer's best interest and cannot place its own interests ahead of the customer's interests." 84 Fed. Reg. 33318, 33320.

37.     Within the General Obligation are more specific duties, including disclosure duties and a duty to avoid and disclose conflicts of interest.

38.     These specific duties require disclosure of "all material facts relating to conflicts of interest … that might incline a broker-dealer to make a recommendation that is not disinterested, including, for example, conflicts associated with proprietary products, payments from third parties, and compensation arrangements." 84 Fed. Reg. 33318, 33321.

39.     Part of a broker-dealer's obligation under Reg. BI is to "consider reasonable alternatives, if any, offered by the broker-dealer in determining whether it has a reasonable basis for making the recommendation." 84 Fed. Reg. 33318, 33321.

40.     One component of a broker-dealer's duty to disclose conflicts of interest concerns compensation. "The receipt of higher compensation for

recommending some products rather than others, whether received by the broker dealer, the associated person, or both, is a fundamental and powerful incentive to favor one product over another." 84 Fed. Reg. 33318, 33364.

41.    Under Reg. BI, Schwab was and is obligated to elevate its clients' interests above its own, to avoid conflicts with clients' interests, and to disclose material facts concerning any conflicts that may exist.

### *Schwab Is Contractually Obligated to Pay a Reasonable Rate of Interest on Retirement and Other Benefit Plan Accounts*

42.    The Account Agreements, including the Schwab IRA and ESA Account Agreement and the Schwab Retirement Plan Brokerage Account Agreement, provide that the Bank Sweep Program is governed by the terms and conditions set forth in the Cash Features Disclosure Statement. Pursuant to the Cash Features Disclosure Statement, Schwab retirement and other benefit plan customers, such as Plaintiff, and Schwab agree that "Retirement and other benefit plan accounts will be paid a reasonable rate consistent with applicable legal and regulatory requirements."

43.    Accordingly, Schwab has explicitly agreed to pay a "reasonable rate of interest" on the cash sweep accounts of their retirement and other benefit plan account clients.

44.    This contractual obligation is in conformity with Internal Revenue Code Section 4975, the provisions of which apply to Schwab's IRA accounts.

Specifically, Internal Revenue Code Section 4975 taxes "prohibited transactions," including when an IRA plan sponsor engages in transactions with a "disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account." 26 U.S.C. § 4975(c).

45.     A "disqualified person" includes those "providing services to the plan." 26 U.S.C. § 4975(e)(2)(B). This would include a bank that holds client assets and an advisory firm that determines which bank will hold those assets, including Schwab.

46.     One safe harbor to the taxation of prohibited transactions is "the investment of all or part of a plan's assets in deposits which bear a reasonable interest rate in a bank or similar financial institution." 26 U.S.C. § 4975(d)(4). These provisions explicitly target situations where a firm might attempt to benefit from holding its client funds by paying them unreasonably low interest rates, and they are instead required to pay a "reasonable interest rate." Accordingly, under 26 U.S.C. § 4975, Defendants were required to pay a reasonable interest rate to retirement account clients.

47.     In the context of accounts governed by 26 U.S.C. § 4975(c), the U.S. Department of Labor defined a "reasonable rate" by considering fair market rates and similar benchmarks, including "short-term rates available to other customers of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by

reference to a benchmark such as sovereign short term debt (e.g., in the U.S., treasury bills)."

48.    The U.S. Treasury regulations include a similar requirement where Schwab "invests plan assets in deposits in itself or its affiliates." 26 C.F.R. § 54.5975-6(b)(3)(i). In those circumstances, the parties' agreement "must name" the bank and "state that [the bank] may make investments in deposits which bear a reasonable rate of interest in itself (or in an affiliate)." *Id*.

49.    In sum, federal law requires that Schwab pay its retirement account clients a "reasonable" interest rate.

### Schwab Is Contractually Obligated to Pay Interest Consistent with Prevailing Market Conditions on Brokerage Accounts

50.    Under the Cash Features Disclosure Statement, Schwab is allowed to pay lower rates in brokerage accounts, but only if they are "consistent with prevailing market and business conditions."  Disclosure Statement at 10.

51.    Given the time frame here, when interest rates were at a high, Schwab failed to provide brokerage clients with rates consistent with prevailing market and business conditions, in breach of its fiduciary duties and its own agreement as further discussed below.

### Schwab's Cash Sweep Contracts Include an Implied Covenant of Good Faith and Fair Dealing

52.    Under California law, which governs Schwab Customer Agreements regarding their cash sweep accounts, all contracts contain an implied covenant of

good faith and fair dealing, which encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included.

53.    This implied covenant includes a pledge that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

54.    The Disclosure Statement includes the following term: "For both the Bank Sweep and Bank Sweep for Benefit Plans Features, the Program Banks will pay the same interest rate on the DDA and MMDA. Interest rates on the Deposit Accounts may be established at a rate as low as possible consistent with prevailing market and business conditions." This term indicates that there is a link between the interest rate paid on Schwab cash sweep accounts and "prevailing market and business conditions" and that, in a high interest rate environment, the interest rate paid out to clients in cash sweep accounts should reflect those prevailing market and business conditions. The provision that the rate will be "as low as possible" is expressly limited by the requirement that the rate must be "consistent" with such conditions. Class members' claim under the breach of the implied covenant of good faith and fair dealing is brought solely on behalf of individuals who do not have a contractual right expressly providing for Schwab's payment of a "reasonable rate" of interest on the cash sweep balances of "retirement and other benefit plan accounts." Such claim is brought on behalf of non-advisory and non-retirement

account retail customers of Schwab (the "Non-Retirement Account Subclass"). Accordingly, the conduct and resulting injury alleged by the Non-Retirement Account Subclass is not identical to, and such claim is not duplicative of, any asserted contractual claim on behalf of those Subclass members.

### *Schwab Breached Its Fiduciary Duties, Contractual Obligations, and the Implied Covenant of Good Faith and Fair Dealing, and Thereby Profited at Its Clients' Expense*

55.    Schwab breached and continues to breach its duties to secure reasonable interest rates for its clients' deposits, its contractual obligations, and the implied covenant of good faith and fair dealing, because the interest paid on its clients' cash deposits was and is not reasonable, and the so-called administrative "fee" it extracted for itself and that impacted the interest provided to customers by the affiliated banks was not reasonable.

56.    Between November 2021 and September 2024, inclusively, the interest rates Schwab as paid on customers' cash in the Cash Features Program has ranged between 0.01% and 0.45%.

57.    The U.S. Department of Labor has provided the following definition of a "reasonable" rate of interest:

> A "reasonable" rate of interest means a rate of interest determinable by reference to short-term rates available to other customers of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as sovereign short term debt (e.g., in the U.S., treasury bills), all in the jurisdiction where the rate is being

evaluated.

68 Fed. Reg. 34646, 34648 (2003).

58.    The Internal Revenue Service similarly defines an "arm's-length interest rate" as "a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances." 26 C.F.R. § 1.482-2(a)(2).

59.    Under these terms, and any prudent understanding of what a "reasonable" rate of interest is, Schwab did not secure or pay a reasonable rate of interest to its customers, including Plaintiffs and Class members. This is supported by reference to other leading indicators of interest rates being paid during this time period.

### The Interest Rates Paid by Federal and Rival Institutions Demonstrate that the Interest Rates Paid by Schwab Are Unreasonably Low

60.    Federal and rival institutions pay their customers interest rates that are drastically higher than those paid by Schwab to its Cash Features Program customers.

61.    The Federal Funds Rate benchmark demonstrates that the interest rate paid to Schwab cash sweep accountholders was not reasonable or consistent with prevailing market conditions. The federal funds market consists of domestic unsecured borrowings by depository institutions from other depository institutions and certain other entities, primarily government sponsored enterprises. In other

words, it is the market of unsecured borrowing transactions, principally between banks. The effective Federal Funds Rate is calculated as a volume-weighted median of such overnight federal funds transactions. As of August 28, 2024, the effective Federal Funds Rate was 5.33%, dramatically higher than the interest that Schwab paid its cash sweep customers.

62.     The yield on short-term U.S. Treasury Bills also demonstrates that the interest rate paid on Schwab cash sweep accounts was not reasonable or consistent with prevailing market conditions. U.S. Treasury Bills are short-term securities issued by the U.S. Department of the Treasury with maturities ranging from four to 52 weeks. They are sold at a discount to their face value, and when they mature, the investor is paid the face value. Treasury Bills are considered safe investments, but they generally do not produce high returns over time, especially in a low-interest-rate environment. Over the past year, the yield on short-term Treasury Bills ranged between 4.5 and 5.6%, again dramatically higher than the interest that Schwab paid its cash sweep customers.

63.     Additionally, Schwab's rival institutions with sweep account programs, such as Fidelity, R.W. Baird, Robinhood, WeBull, and Vanguard, all pay drastically higher interest rates that more accurately reflect prevailing business and market conditions, ranging between 2 and 5%, compared to the Schwab rates which have never surpassed 0.45% in the past three years.

64.     Money market rates are another benchmark for determining a

"reasonable rate." Crane's Retail Money Fund Index, for example, cited market rates of 4.85% as of August 31, 2024. Schwab offers money market funds to its customers, including money market funds that offer 7-day yields of 4.88% or 5.73% as of September 27, 2024.

### *Schwab Was Unjustly Enriched by Its Misconduct*

65.    Schwab derives significant financial benefits at the direct cost of its clients by keeping the interest rates for its cash sweep accounts artificially low, while it earns higher interest rates on those deposits.

66.    An example of the partial benefit to Schwab derived from the setting of cash sweep interest rates on cash sweep accounts is reflected by the massive growth of its net interest revenue from 2021 to present. Between 2021 and 2023, Schwab's net interest revenue increased 17% from $8 billion to $9.4 billion.

## <u>CLASS ACTION ALLEGATIONS</u>

67.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a Class and Subclasses defined as follows:

The Class is defined as:

> All retail clients of Schwab who had cash deposits in Schwab's Cash Features Program.

The Retirement Plan Subclass is defined as:

> All retail clients of Schwab who held retirement or other benefit plan accounts with Schwab and had cash deposits in Schwab's Cash Features Program.

The Non-Retirement Plan Subclass is defined as:

> All retail clients of Schwab who did not hold retirement or other benefit plan accounts with Schwab and had cash deposits in Schwab's Cash Features Program.

68. Excluded from the Class and Subclasses are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, and any judge who adjudicates this case, including their staff and immediate family.

69. Plaintiff reserves the right to amend the class and subclass definitions.

70. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

    a. **Numerosity**. The members of the Class and Subclasses are so numerous that joinder would be impracticable. The exact number of class members is unknown to Plaintiff, but on information and belief, consists of thousands of Schwab customers who hold retirement or non-retirement plans.

    b. **Ascertainability**. The identities of Class Members and Sublcasses are ascertainable through Defendants' records, Class Members' records, publication notice, self-identification, and other means.

    c. **Typicality**. Plaintiff's claims are typical of Class and Subclasses claims as each arises from the same factual and legal theories.

    d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's and Subclasses' interests. His interests do not conflict with

the Class's and Subclasses' interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's and Subclasses' claims raise predominantly common factual and legal questions that a class-wide proceeding can answer for the Class and Subclasses. Indeed, it will be necessary to answer the following questions, which include but are not limited to:

   i.  The terms and scope of Defendants' duty to members of the Class and Subclasses, and the extent to which Defendants breached that duty;

   ii.  Whether the interest rates paid by Defendants on their Cash Features Program are reasonable, or consistent with prevailing market conditions;

   iii.  Whether Defendants breached the contractual terms of their retirement and other benefit plan programs with members of the Retirement Plan Subclass.

   iv.  Whether Defendants breached the implied covenant of good faith and fair dealing with members of the Non-Retirement Plan Subclass;

   v.  Whether Defendants were unjustly enriched by their wrongful

conduct;

vi.   Whether Defendants committed gross negligence;

vii.  The extent to which Class members are entitled to damages or other monetary relief; and

viii. Whether and to what extent Plaintiff and Class and Subclass members are entitled to the award of attorneys' fees and the reimbursement of litigation expenses.

71.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

### CAUSES OF ACTION

### COUNT I
### Breach of Fiduciary Duty

72.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein. Plaintiff asserts this claim on behalf of himself and the Class.  This claim is being asserted alternatively to any breach of contract claim, and asserting it does not run afoul of the economic loss doctrine.

73.    Defendants owed fiduciary duties to the Class due to Defendants'

exercise of control and discretion over Plaintiffs' and other Class members' financial holdings, and in accordance with their duties under the Advisors Act or similar acts.

74.    Defendants' duties to Plaintiffs and the members of the Class included (i) a duty of care; (ii) a duty of loyalty to their clients; and (iii) a duty to act in the best interest of their clients, including by placing the interests of their clients ahead of their own best interests.

75.    As set forth above, Defendants recklessly and intentionally breached their duties to their clients when they (i) allocated clients' cash into sweep accounts that benefited Schwab's interests above their clients' interests; and (ii) set and paid an unreasonably low rate of interest on clients' cash sweep accounts through Schwab's collection of unreasonable fees or fees that were not consistent with prevailing market conditions.

76.    Defendants' past and ongoing breaches of their fiduciary duties to Plaintiffs and the Class members damaged Plaintiffs and the Class because they failed to earn a reasonable rate of return or a return consistent with prevailing market conditions on their cash balances.

77.    Accordingly, Plaintiffs, individually and on behalf of the Class, seek all damages permitted by law.

## COUNT II
## Unjust Enrichment

78.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein. Plaintiff asserts this claim on behalf of himself and the Class.

79.    Defendants' wrongful conduct caused Plaintiffs and the other members of the Class to receive unreasonably low interest payments on their cash sweep deposits and Defendants derived the benefit of such under-payment in the form of net interest income, fees and other financial benefits.

80.    As a result, Defendants were unjustly enriched by their misconduct, and Plaintiffs and the other members of the Class conferred a benefit upon Defendants because they received significantly greater net interest income than they otherwise would have, but for Defendants' misconduct.

81.    Defendants understood, accepted, and retained the benefits conferred by Plaintiffs and the other members of the Class.

82.    It would be inequitable and unjust for Defendants to retain the benefits of their misconduct, including the net interest income they earned at the expense of their own clients.

83.    Plaintiffs and the other members of the Class suffered financial harm from Defendants' misconduct and are entitled to damages, including the restitution and disgorgement of the profits unjustly obtained by Defendants, plus prejudgment

interest on those amounts.

## COUNT III
## Breach of Contract

84.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein. Plaintiff asserts this claim on behalf of himself and the Retirement Plan Subclass. This count does not run afoul of the economic loss doctrine.

85.    The Schwab agreements for its investment accounts offered and provided to members of the Retirement Plan Subclass are a valid and binding contract between Schwab and its accountholders.

86.    The governing documents require Schwab to pay "Retirement and benefit plan accounts . . . a reasonable rate consistent with applicable legal and regulatory requirements."

87.    Schwab breached the terms of its agreements with Plaintiffs and the Retirement Plan Subclass because Schwab did not pay its customers a reasonable rate of interest on their cash deposits. Schwab further extracted for itself unreasonable interest rate payments and fees from Schwab's affiliated banks.

88.    Plaintiffs and the members of the Retirement Plan Subclass suffered financial harm from the Defendants' misconduct, and they are entitled to damages from the Defendants, plus prejudgment interest thereon.

## COUNT IV
### Breach of Contract including the Implied
### Covenant of Good Faith and Fair Dealing

89.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein. Plaintiff asserts this claim on behalf of himself and Non-Retirement Plan Subclass. This count is being asserted alternatively to the breach of fiduciary duty count and does not run afoul of the economic loss doctrine.

90.     Schwab accountholders entered into a written contract with Schwab, the terms of which are contained in and incorporated into various standardized documents drafted by Schwab, including the Disclosure Statement. These documents were and are, for all purposes relevant hereto, contracts between the accountholders and Schwab.

91.     Plaintiffs and members of the Non-Retirement Plan Subclass paid valuable consideration in exchange for these contractual rights.

92.     Inherent in these contracts was, and is, an implied covenant of good faith and fair dealing, requiring Schwab to deal fairly with Plaintiffs and other accountholders, to fulfill their obligations to Plaintiffs and Non-Retirement Plan Subclass members in good faith, and to not deprive Plaintiffs and Non-Retirement Plan Subclass members of the fruits of their bargain.

93.     By failing to pay Plaintiffs and the Non-Retirement Plan Subclass members a reasonable rate of interest or a rate consistent with prevailing market

conditions, especially in a high interest rate environment, Schwab breached the implied covenant of good faith and fair dealing inherent in the contracts. Through the implied covenant of good faith and fair dealing, Schwab was obligated to pay Plaintiffs and the members of the Non-Retirement Plan Subclass a reasonable rate of interest or a rate consistent with prevailing market conditions in a high interest rate environment. By failing to do so, Schwab violated the reasonable expectations of the members of the Non-Retirement Plan Subclass.

94.    Plaintiffs and the other members of the Non-Retirement Plan Subclass suffered damages as a direct and proximate result of the foregoing breach of the implied covenant of good faith and fair dealing, and they are entitled to damages from the Defendants, plus prejudgment interest thereon.

## COUNT V
## Gross Negligence

95.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein. Plaintiff asserts this claim on behalf of himself and the Class.

96.    As set forth above, Defendants owed fiduciary duties to Plaintiffs and the other members of the Class in the operation of the Schwab Cash Features Program.

97.    Defendants breached their duties to Plaintiffs and the Class by acting in their own best interest to the detriment to Plaintiffs and the Class, which included

failing to pay a reasonable rate of interest on customers' Schwab cash sweep account balances.

98.    Defendants' misconduct was grossly negligent because it comprised a reckless disregard for Schwab's clients' best interests and represented an extreme departure from the ordinary standard of care.

99.    Defendants' misconduct directly and proximately caused financial harm to Plaintiffs and the other members of the Class. As a result, Plaintiffs and other Class members are entitled to damages from the Defendants, plus prejudgment interest thereon.

## **PRAYER FOR RELIEF**

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class and Subclasses, appointing Plaintiff as Class and Subclass representative, and appointing his counsel to represent the Class;

B.    Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

C.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

D.    Awarding attorneys' fees and costs, as allowed by law;

E.    Awarding prejudgment and post-judgment interest, as provided by law;

F.    Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

G.    Granting such other or further relief as may be appropriate under the circumstances.

Respectfully submitted, this 6th day of December, 2024.

Respectfully submitted,

s/  Lynda J. Grant
Lynda J. Grant
**THE GRANT LAW FIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (212) 292-4441
LGrant@grantfirm.com

Howard T. Longman
**LONGMAN LAW, P.C.**
354 Eisenhower Parkway, Suite 1800
Livingston, New Jersey 07039
Telephone: (973) 994-2315
hlongman@longmanlaw.law

***Attorneys for Plaintiff and the Class***